IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

NATHAN BROWN,

                         Plaintiff,

                                              Civil Action No.
                                              9:07-CV-0480 (LEK/DEP)

        vs.

DALE ARTUS, *et al.,*

                         Defendants.

_____

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF:

Nathan Brown, *Pro Se*
90-A-3219
Clinton Correctional Facility
P.O. Box 2001
Dannemora, NY 12929

FOR DEFENDANTS:

HON. ANDREW M. CUOMO            CHRISTINA ROBERTS-RYBA, ESQ.
New York State Attorney General  JUSTIN C. LEVIN, ESQ.
The Capitol                     Assistant Attorneys General
Albany, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

        Plaintiff Nathan Brown, a New York State prison inmate who is

proceeding *pro se* and *in forma pauperis*, commenced this action pursuant to 42 U.S.C. § 1983, alleging deprivation of his civil rights.  In his complaint plaintiff asserts claims of retaliation and cruel and unusual punishment arising from his incarceration, based upon events alleged to have occurred on March 26, 2007, naming as defendants several employees of the New York State Department of Correctional Services ("DOCS"), including the superintendent and former deputy superintendent of the prison facility in which he was housed at the relevant times, and requests both monetary and declaratory relief.

Currently before the court is a motion by defendants Dale Artus and R.J. Minogue for partial summary judgment dismissing plaintiff's claims against them.  In their motion, those defendants maintain that the record fails to support plaintiff's claims of retaliation against them or demonstrate their personal involvement in the conduct giving rise to Brown's Eighth Amendment violation, and, in any event, that they are protected from suit based upon qualified immunity.  Plaintiff has opposed defendants' motion, and additionally has cross-moved for sanctions stemming from an alleged violation of Rule 11 of the Federal Rules of Civil Procedure.  For the reasons set forth below, I recommend that defendants' motion for

summary judgment be granted in part, but otherwise denied, and that

plaintiff's motion for sanctions be denied.

I.      BACKGROUND[1]

Plaintiff is a prison inmate entrusted to the care and custody of the

DOCS.  At the time of the events detailed in his amended complaint,

plaintiff was designated to the Clinton Correctional Facility ("Clinton"),

located in Dannemora, New York.  Amended Complaint (Dkt. No. 45) ¶ 2.

Plaintiff's incarceration results from a 1990 murder conviction, for which

he was sentenced to a term twenty-five years to life.  Levin Decl. (Dkt. No.

67-4) Exh. B.

On March 24, 2007, while at Clinton, plaintiff was issued a

misbehavior report by Corrections Officer G. LaBonte accusing him of

refusing to obey a direct order, failure to maintain clean quarters, and

interference with staff.  Levin (Dkt. No. 67-4) Exh. C.  That disciplinary

report resulted from plaintiff's failure to obey a direct order to clean his cell

bars.  *See id.*  A Tier II disciplinary hearing was convened on March 28,

_____

[1]      In light of the procedural posture of the case the following recitation is
derived from the record now before the court, with all inferences drawn and
ambiguities resolved in favor of the plaintiff.  *See Burtnieks v. City of New York,* 716
F.3d 982, 985-86 (2d Cir. 1983) (citations omitted).  It should be noted, however, that
many if not most of plaintiff's allegations are sharply contested by the defendants.

2007 to address the charges and, due to his refusal to attend, was held in

plaintiff's absence by Hearing Officer John Miller.[2]  *Id.*  At the close of the

proceedings the hearing officer found plaintiff guilty of refusing to obey a

direct order and failure to maintain clean quarters, imposing a penalty

which included thirty days of keeplock confinement with a corresponding

loss of telephone, package, and commissary privileges.[3]  *Id.*

On the same day that Corrections Officer LaBonte issued plaintiff a

misbehavior report, Brown authored a letter to defendant L. Turner, the

---

[2]     The DOCS conducts three types of inmate disciplinary hearings.  Tier I hearings address the least serious infractions, and can result in minor punishments such as the loss of recreation privileges.  Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the Special Housing Unit (SHU).  Tier III hearings concern the most serious violations, and could result in unlimited SHU confinement and the loss of "good time" credits.  *See Hynes v. Squillace,* 143 F.3d 653, 655 (2d Cir. 1998), *cert. denied*, 525 U.S. 907, 119 S. Ct. 246 (1998).

[3]     Keeplock is a form of confinement restricting an inmate to his or her cell, separating the inmate from others, and depriving him or her of participation in normal prison activities.  *Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir. 1989); *Warburton v. Goord*, 14 F. Supp. 2d 289, 293 (W.D.N.Y. 1998) (citing *Gittens*); *Tinsley v. Greene,* No. 95-CV-1765, 1997 WL 160124, at *2 n.2 (N.D.N.Y. Mar. 31, 1997) (Pooler, D.J. & Homer, M.J.) (citing, *inter alia, Green v. Bauvi*, 46 F.3d 189, 192 (2d Cir. 1995)).  Inmate conditions while keeplocked are substantially the same as in the general population.  *Lee v. Coughlin*, 26 F. Supp. 2d 615, 628 (S.D.N.Y. 1998).  While on keeplock confinement an inmate is confined to his or her general population cell for twenty-three hours a day, with one hour for exercise.  *Id.*  Keeplocked inmates can leave their cells for showers, visits, medical exams and counseling, and can have cell study, books and periodicals, *Id.*  The primary difference between keeplock and the general population confinement conditions is that keeplocked inmates do not leave their cells for out-of-cell programs, and are usually allowed less time out of their cells on the weekends.  *Id.*

Deputy Superintendent for Programs at Clinton, accusing LaBonte of sexual misconduct.  Levin Decl. (Dkt. No. 67-4) Exh. D; Amended Complaint (Dkt. No. 45) ¶ 9.  That letter, though dated March 24, 2007, was forwarded by plaintiff to prison officials two days later, and was stamped as "received" on March 26, 2007.  *See id.*

On the day on the letter complaining of Corrections Officer LaBonte's actions was sent by Brown and received by defendant Turner's office, plaintiff was escorted to an office within the Upper F Block at Clinton, where he was placed in mechanical restraints by defendants Beeman and Corrigan, and thereafter beaten by those two individuals, in concert with Corrections Sergeant Darryl Menard.  Amended Complaint (Dkt. No. 45) ¶ 10.  During the course of the assault one of the corrections workers, defendant Beeman, brandished a knife and threatened to stab the plaintiff if he filed any further grievances.  *Id.*

Plaintiff wrote to Clinton Superintendent Dale Artus on April 3, 2007, complaining of the assault.  Levin Decl. (Dkt. No. 67-4) Exh. F.  As result of that complaint, plaintiff was examined by medical professionals at the facility on April 5, 2007, and photographs were taken to determine the extent of any physical injuries suffered.  *See* Levin Decl. (Dkt. No. 67-4)

Exh. G, H.  An investigation conducted with respect to the incident resulted in the issuance of a memorandum dated April 9, 2007, in which defendant Minogue, a corrections captain, concluded that plaintiff's complaint was without merit.[4]  Levin Decl. (Dkt. No. 67-4) Exh. I.

## II.   PROCEDURAL HISTORY

Plaintiff commenced this action on May 3, 2007, Dkt. No. 1, and later amended his complaint, with court approval, *see* Dkt. No. 35,  on June 11, 2008.  Dkt. No. 45.  Named as defendants in plaintiff's amended complaint are Dale Artus, the superintendent at Clinton; Linda Turner, a former deputy superintendent of program services at the facility; R.J. Minogue, a former corrections captain at the facility; Darryl Menard, a corrections sergeant at Clinton; and Keith Beeman and Geri Corrigan, two corrections officers at the prison.  *Id.*  Plaintiff's amended complaint asserts two causes of action, one alleging unlawful retaliation in contravention of the First Amendment, and the second asserting that he was subjected to cruel and unusual punishment in violation of the Eighth

---

[4]      Dissatisfied with the results of the first investigation, on April 11, 2007 plaintiff authored another institutional complaint concerning the matter to the DOCS commissioner.  Levin Decl (Dkt. No. 67-4) Exh. J.  After apparently having been informed for a second time that his complaint was found to be unsubstantiated, plaintiff sent Superintendent Artus a second letter, dated April 23, 2007, laced with profanity. Levin Decl. (Dkt. No. 67-4) Exh. K.

Amendment.  *Id.*

Following joinder of issue and the close of discovery, defendants

Artus and Minogue moved for partial summary judgment pursuant to Rule

56 of the Federal Rules of Civil Procedure dismissing plaintiff's claims

against them. Dkt. No. 67. In their motion those defendants argue that 1)

the record fails to establish that they took action toward Brown in

retaliation for his having engaged in protected activity ; 2) they were not

personally involved in any potential Eighth Amendment violation; and 3) in

any event, they are shielded from suit by the doctrine of qualified

immunity.  Plaintiff's opposition to defendants' motion was received by the

court on February 9, 2009.  Dkt. No. 68.

On May 8, 2009, plaintiff moved for sanctions, asserting that

defendant Artus violated Rule 11 of the Federal Rules of Civil Procedure,

by submitting an affidavit in direct conflict with evidence submitted by

plaintiff.[5]  Dkt. No. 72.  Defendants have since responded in opposition to

plaintiff's motion, Dkt. No. 75, and plaintiff has now replied to defendants'

submission.  Dkt. No. 76.

---

[5]      Plaintiff has been an active participant in the litigation process throughout the course of this action.  The docket sheet reflects, for example, his filing of some seven motions to compel discovery, as well as at least one prior request for issuance of sanctions.  *See* Dkt. Nos. 16, 21, 23, 24, 38, 55, 57, 61.

Both motions currently before the court are ripe for determination, and have been referred to me for the issuance of a report and recommendation to the assigned district judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).[6] *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

A.   Summary Judgment Standard

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure.  Under that provision, summary judgment is warranted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is "material", for purposes of this inquiry, if it "might affect

---

[6]      While plaintiff's motion for sanctions may fall within my jurisdiction, depending upon the contemplated disposition, in light of the pendency of a dispositive motion I have formatted my ruling as a report and recommendation addressing all issues now before the court.

the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at

248, 106 S. Ct. at 2510; *see also Jeffreys v. City of New York*, 426 F.3d

549, 553 (2d Cir. 2005) (citing *Anderson,* 477 U.S. at 247, 106 S.Ct. at

2509-10).  A material fact is genuinely in dispute "if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party."

*Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.

A party seeking summary judgment bears the initial burden of

demonstrating that there is no genuine dispute of material fact to be

decided with respect to any essential element of the claim in issue; the

failure to meet this burden warrants denial of the motion.  *Anderson*, 477

U.S. at 250 n.4, 106 S. Ct. at 2511 n.4; *Security Ins.*, 391 F.3d at 83.  In

the event this initial burden is met, the opposing party must show, through

affidavits or otherwise, that there is a material issue of fact for trial.  Fed.

R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*,

477 U.S. at 250, 106 S. Ct. at 2511.  Though *pro se* plaintiffs are entitled

to special latitude when defending against summary judgment motions, to

successfully resist the entry of summary judgment they must establish

more than mere "metaphysical doubt as to the material facts."  *Matsushita

Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct.

1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).  When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party.  *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998).  The entry of summary judgment is warranted only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party.  *See Building Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

    B.    <u>Plaintiff's Failure to Properly Respond to Defendants' Motion</u>

As an initial matter, defendants point out that despite service with their motion papers of a notice pursuant to Local Rule 56.2, informing him of the consequences of such a failure, plaintiff has failed to include within his opposition a response to defendants' statement of material facts not in issue, filed pursuant to N.D.N.Y.L.R. 7.1(a)(3).  Before turning to the

merits of plaintiff's claims, a threshold issue to be addressed is the legal

significance, if any, of his failure to properly respond to defendants' Rule

7.1(a)(3) Statement, and specifically whether that failure requires the court

to deem all facts not specifically controverted by Brown to be true.

This court's rules provide that when responding to a properly filed

summary judgment motion,

> [t]he opposing party shall file a response to the Statement of
> Material Facts.  The non-movant's response shall mirror the
> movant's Statement of Material Facts by admitting and/or denying
> each of the movant's assertions in matching numbered
> paragraphs... <u>The Court shall deem admitted any facts set forth in
> the Statement of Material Facts that the opposing party does not
> specifically controvert.</u>

N.D.N.Y.L.R. 7.1(a)(3) (Emphasis in original).  Despite the compulsory

tenor of the rule, mandating that facts are not properly controverted be

deemed admitted, it should be noted that *pro se* plaintiffs are entitled to

special latitude when defending against summary judgment motions.  *See

Jemzura v. Public Serv. Comm'n,* 961 F. Supp. 406, 415 (N.D.N.Y. 1997)

(McAvoy, C.J.)).; *Johnson v. Tedford*, No. 04-CV-632 (GLS/DEP), 2007

WL 4118284, at *2 (N.D.N.Y. Nov. 16, 2007) (Sharpe, J.).  Further, "[a]

district court has broad discretion to determine whether to overlook a

party's failure to comply with local rules."  *D.H. Blair & Co., Inc. v.*

*Gottdiener*, 462 F.3d 95, 109, n.2 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001)).

Plaintiff responded to defendants' summary judgment motion on February 9, 2009 (Dkt. No. 68), and attempted to include within it a response to defendants' statement of material facts.  Although plaintiff's paragraphs do not mirror those of defendants, it is fairly clear from his opposition motion and amended complaint what facts are contested. Based on the broad discretion afforded to the court, and in deference to his *pro se* status, I find that plaintiff's Local Rule 7.1(a)(3) response is adequate to show the existence of certain factual disputes.  *See Holtz*, 258 F.3d at 73; *Cruz v. Church*, No. 05-CV-1067 (GTS/DEP), 2008 WL 4891165, at *3-4 (N.D.N.Y. Nov. 10, 2008) (Suddaby, J.).

C.    Retaliation

In their motion, defendants Artus and Minogue first argue that the record fails to substantiate their involvement in any alleged retaliation stemming from plaintiff's filing of a grievance against Corrections Officer LaBonte.

When adverse action is taken by prison officials against an inmate, motivated by the inmate's exercise of a right protected under the

Constitution, including the free speech provisions of the First Amendment, a cognizable retaliation claim under 42 U.S.C. § 1983 lies.  *See Franco v. Kelly*, 854 F.2d 584, 588-90 (2d Cir. 1988).  As the Second Circuit has repeatedly cautioned, however, such claims are easily incanted and inmates often attribute adverse action, including the issuance of misbehavior reports, to retaliatory animus; courts must therefore approach such claims "with skepticism and particular care."  *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), overruled on other grounds, *Swierkiewicz v. Sorema*, N.A., 534 U.S. 506, 122 S. Ct. 992 (2002) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983); *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003).

In order to state a *prima facie* claim under section 1983 for retaliatory conduct, a plaintiff must advance non-conclusory allegations establishing that 1) the conduct at issue was protected; 2) the defendants took adverse action against the plaintiff; and 3) there was a causal connection between the protected activity and the adverse action – in other words, that the protected conduct was a substantial or motivating factor in the prison officials' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287,

97 S. Ct. 568, 576 (1977); *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007); *Dawes*, 239 F.3d at 492.  If the plaintiff carries this burden, then to avoid liability the defendants must show by a preponderance of the evidence that they would have taken action against the plaintiff "even in the absence of the protected conduct."  *Mount Healthy*, 429 U.S. at 287, 97 S. Ct. at 576.  If taken for both proper and improper reasons, state action may be upheld if the action would have been taken based on the proper reasons alone.  *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citations omitted).

Personal involvement of a named defendant in any alleged constitutional deprivation is a prerequisite to an award of damages against that individual under section 1983.  *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S. Ct. 1282 (1978)).  In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant.  *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).   As is true of other types of claims, this principle applies to

causes of action claiming unlawful retaliation.  *See Abascal v. Hilton*, No. 04-CV-1401, 2008 WL 268366, at *10 (N.D.N.Y. Jan. 30, 2008) (Kahn, D.J. and Lowe, M.J.).

Plaintiff's retaliation claim in this action centers upon the beating allegedly administered by defendants Menard, Corrigan and Beeman, an incident which he attributes to retaliatory animus for his having lodged a complaint against Corrections Officer LaBonte.[7]  The record is somewhat lacking in evidence of participation by defendants Artus and Menard in the alleged use of force against the plaintiff.  Both defendants Artus and Minogue have given declarations in which they deny having ordered anyone to assault the plaintiff, or having engaged in any conspiracy or plan to retaliate against Brown.  Artus Decl. (Dkt. No. 67-6) ¶¶ 26, 33; Minogue Decl. (Dkt. No. 67-7) ¶¶ 25, 32.

While the allegations in plaintiff's complaint that defendant Minogue was covering up sexual misconduct are undeniably conclusory, plaintiff testified during his deposition that defendant Menard stated to him he had

---

[7]  Plaintiff claims that defendant Minogue lied during the course of an Inspector General's investigation of Brown's sexual misconduct complaint, in addition to sanctioning the assault on him.  Amended Complaint (Dkt. No. 45) ¶ 15.   The allegation that defendant Minogue lied during that investigation – an allegation that he vehemently denies, *see* Minogue Decl. (Dkt. No. 67-7) ¶¶ 23-25, - is insufficient to qualify as adverse action for purposes of plaintiff's retaliation claim. *Davis*, 320 F.3d. at 353.

been sent by Minogue to plaintiff's cell to attack him as a result of the grievance mailed by plaintiff earlier that day.  Levin Decl. (Dkt. No. 67-4) Exh. A. at p. 27.  Drawing all inferences in favor of plaintiff, though scant, this allegation suffices to establish a genuine issue of material fact as to whether Minogue did in fact encourage or solicit Menard to assault plaintiff in return for having filed a grievance against Corrections Officer LaBonte, and on this basis I recommend that defendants' motion for partial summary judgment relating to defendant Minogue be denied.

In contrast, notwithstanding sheer speculation on plaintiff's part, the record is wholly devoid of evidence of defendant Artus' personal involvement in the alleged retaliation.  In the face of his express denial of knowledge or responsibility, plaintiff's conclusory allegations to the effect that defendant Artus "sanctioned, ratified, condoned and participated" in the assault are insufficient to raise an issue of fact and to avoid summary judgment.  *See Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002); *Russo v. City of Bridgeport*, 479 F.3d 196, 210-11 (2d Cir. 2007), *cert. denied*, 128 S. Ct. 109 (2007).

D.    Eighth Amendment

Plaintiff claims that by being assaulted and choked into

16

unconsciousness, he suffered cruel and unusual punishment in violation of the Eighth Amendment.  As with plaintiff's retaliation claim, defendants Artus and Minogue also seek dismissal of this claim as against them on the ground that the record lacks of proof of their personal involvement.

The Constitution imposes a duty upon the State to assume some responsibility for an inmate's safety and general well being.  *Helling v. McKinney*, 509 U.S. 25, 32, 113 S. Ct. 2475, 2480 (1993) (citing *DeShaney v. Winnebago County Dep't of Soc. Services*, 489 U.S. 189, 199-200, 109 S. Ct. 998, 1005-06 (1989)). The Eighth Amendment bans cruel and unusual punishment, and is applicable to the States through the Due Process Clause of the Fourteenth Amendment.  *Robinson v. California*, 370 U.S. 660, 675, 82 S. Ct. 1417, 1425 (1962).  The scope of protection afforded by meaning of the Eighth Amendment must be drawn "from the evolving standards of decency that mark the progress of a maturing society."  *Rhodes v. California*, 452 U.S. 337, 346, 101 S. Ct. 2392, 2399 (1981) (quoting *Trop v. Dulles*, 356 U.S. 86, 101, 78 S. Ct. 590, 598 (1958)).

To successfully prove a violation of the Eighth Amendment, the "inmate must show 1) that the deprivation alleged is 'objectively

sufficiently serious'... and 2) that the defendant official possessed a 'sufficiently culpable state of mind' associated with 'the unnecessary and wanton infliction of pain.'" *Trammell v. Keane*, 338 F.3d 155, 161 (2d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977 (1994)).  The required culpable state of mind of the prison official is one of deliberate indifference.  *Farmer*, 511 U.S. at 834, 114 S. Ct. at 1977; *Trammell*, 338 F.3d at 162; *Bolton v. Goord*, 992 F. Supp. 604, 626 (S.D.N.Y. 1998). The prison official must know that the inmate faces "a substantial risk of serious harm and [must disregard] that risk by failing to take reasonable measures to abate it."  *Bolton*, 992 F. Supp. at 626 (quoting *Farmer*, 511 U.S. at 847, 114 S. Ct. at 1984)).

At all times relevant to the complaint, both moving defendants were supervisory DOCS employees.  Liability under 42 U.S.C. § 1983 for a constitutional deprivation cannot be founded solely on a defendants' position as a supervisor; "supervisory liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on *respondeat superior*."  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quoting *Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir. 2003), *cert denied*, 534 U.S. 1093, 125 S. Ct. 971 (2005)).  Personal involvement

of a supervisor may be found, however, if the evidence shows that

> 1) the defendant participated directly in the alleged constitutional violation, 2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, 3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowing the continuance of such a policy or custom, 4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or 5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (1995) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).

With respect to defendant Artus, plaintiff alleges that prior to the assault information was shared with the superintendent concerning incidents of inmates being attacked by guards, and that despite that knowledge Artus failed to take appropriate and meaningful remedial measures.  Brown Decl. (Dkt. No. 68) ¶ 3.  In his opposition to defendants' motion, plaintiff produced excerpts of minutes from prison Inmate Liaison Committee ("ILC") meetings dated December 28, 2006, April 3, 2007 and July 27, 2007, all apparently attended by Superintendent Artus, during which the numerous complaints received from inmates relating to assaults, disrespect, and the use of profanity by officers was discussed.  Plaintiff's Exhs. (Dkt. No. 68-2), Exhs. A-C.  The minutes for the

December 28, 2006 ILC meeting reveal that the superintendent was advised of a "dangerous atmosphere" with inmates experiencing assaults, disrespect, profanity, and corrections officers failing to follow established procedures.  *Id.*, Exh. A.  The ILC minutes also reflect that Superintendent Artus acknowledged receipt by members of his executive team of numerous complaints and letters from the inmate population regarding the alleged abuses.  *Id.*  Those minutes reveal the superintendent's awareness of potential misconduct by DOCS employees, as well as his response that "physical, mental and verbal abuse is inappropriate and will not be condoned.  All allegations of this type will be thoroughly investigated and responded to appropriately." *Id.*

In a declaration given in support of defendants' motion, Superintendent Artus states that he is unaware of any recurring assaults by staff on inmates in the Upper F Block or in the rotunda.  Artus Decl. (Dkt. No. 67-6) ¶ 27.  There is evidence, however, to suggest that defendant Artus was or reasonably should have been aware of such occurrences, at least as of July 27, 2007; during an ILC executive board meeting on that date a rise in the number of complaints of staff abuse in that area was noted, with the superintendent indicating that his

administration "would also like to have cameras in the Upper-F Rotunda and B-block Frisker as well as other areas; however, at this time to do so is cost prohibited."  Plaintiff's Exhs. (Dkt. No. 68-2) Exh. C.  And, while that meeting was held several months after the alleged beating of plaintiff, drawing all inferences in Brown's favor a reasonable factfinder could conclude that defendant Artus possessed the requisite knowledge of potential staff abuses and, at the very least, was grossly negligent in carrying out his duties as the facility superintendent by not taking appropriate measures to avoid such staff misconduct.  I therefore recommend that the portion of defendants' partial summary judgment motion seeking dismissal of plaintiff's Eighth Amendment claim as against defendant Artus be denied.

Turning to plaintiff's Eighth Amendment claims against defendant Minogue, I also note the existence of evidence from which a reasonable jury could find the requisite personal involvement on his part.  As was previously noted, during his deposition plaintiff testified to having been told by defendant Menard that he had been sent by Minogue to assault Brown, in response for the LaBonte grievance.   Under the circumstances, and for the same reasons that were discussed with regard to plaintiff's retaliation

claim, I conclude that triable issues of material fact exist concerning whether defendant Minogue was sufficiently involved in conduct giving rise to plaintiff's Eighth Amendment claim to be exposed to liability.

    E.    <u>Qualified Immunity</u>

    In addition to challenging plaintiff's claims against them on the merits, defendants Artus and Minogue also assert their entitlement to qualified immunity from suit.

    Qualified immunity shields government officials performing discretionary functions from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982) (citations omitted). Accordingly, governmental officials sued for damages "are entitled to qualified immunity if 1) their actions did not violate clearly established law, or 2) it was objectively reasonable for them to believe that their actions did not violate such law." *Warren v. Keane*, 196 F.3d 330, 332 (2d Cir. 1999) (citing *Salim v. Proulx*, 93 F.3d 86, 89 (2d Cir. 1996)); *see also Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007); *Iqbal v. Hasty*, 490 F.3d 143,152 (2d Cir. 2007), *rev'd on other grounds Ashcroft v. Iqbal*, ___ U.S.

___, 129 S. Ct. 1937 (May 18, 2009).  The law of qualified immunity seeks to strike a balance between overexposure by government officials to suits for violations based upon abstract rights and an unduly narrow view which would insulate them from liability in connection with virtually all discretionary decisions.  *Locurto v. Safir*, 264 F.3d 154, 162-63 (2d Cir. 2001);   *Warren*, 196 F.3d at 332.  As the Second Circuit has observed,

> [q]ualified immunity serves important interests in our political system, chief among them to ensure that damages suits do not unduly inhibit officials in the discharge of their duties by saddling individual officers with personal monetary liability and harassing litigation.

*Provost v. City of Newburgh*, 262 F.3d 146, 160 (2d Cir. 2001) (internal quotations omitted) (citing, *inter alia*, *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 456 F.2d 1339, 1348 (2d Cir. 1972)).

Until recently, it was generally agreed that a proper qualified immunity analysis entailed a three step inquiry.  *Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 211-12 (2d Cir. 2003).  As a threshold matter a court considering the issue was charged with first determining whether, based upon the facts alleged, the plaintiff had facially established a constitutional violation.  *Id.*; *Gilles v. Repicky*, 511

23

F.3d 239, 243-44 (2d Cir. 2007).  If the answer to this inquiry was in the affirmative, then the focus turned to whether the right in issue was clearly established at the time of the alleged violation.  *Id.*  (citing *Saucier v. Katz*, 533 U.S. 194, 201-02, 121 S. Ct. 2151, 2156 (2001));  *see also Poe v. Leonard*, 282 F.3d 123, 132-33 (2d Cir. 2002).  Finally, upon determining that the plaintiff had a clearly established, constitutionally protected right which was violated, the court next considered whether it was nonetheless objectively reasonable for the defendant to believe that his or her action did not abridge that established right.  *Harhay*, 323 F.3d at 211; *Poe*, 282 F.3d at 133 (quoting *Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir. 1998) (quoting, in turn, *Salim*, 93 F.3d at 89)).

The United States Supreme Court recently had the opportunity to reconsider the analysis prescribed by *Saucier*, holding that while the sequence of the inquiry set forth in that case is often appropriate, it should no longer be regarded as compulsory.  *Pearson v. Callahan*, 555 U.S. ___, 129 S. Ct. 808, 2009 WL 128768, at *9 (Jan. 21, 2009).  In *Pearson*, the Court reasoned that while the *Saucier* protocol promotes the development of constitutional precedent and is "especially valuable with respect to questions that do not frequently arise in cases in which a

qualified immunity defense is unavailable," the rigidity of the rule comes with a price. *Id.* at *10. The inquiry often wastes both scarce judicial and party resources on challenging questions that have no bearing on the outcome of the case. *Id.* Given that the purpose of the qualified immunity doctrine is to ensure that insubstantial claims are resolved prior to discovery, the Court opined that the algorithm prescribed by *Saucier* may serve to defeat this goal by requiring the parties "to endure additional burdens of suit – such as the cost of litigating constitutional questions and delays attributable to resolving them – when the suit otherwise could be disposed of more readily." *Id*. (quotations and citations omitted).

As a result of its reflection on the matter, the *Pearson* Court concluded that because the judges of the district courts and courts of appeals "are in the best position to determine the order of decisionmaking [that] will best facilitate the fair and efficient disposition of each case", those decision makers "should be permitted to exercise their sound discretion in deciding which of the... prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Id.* at *9. In other words, as recently emphasized by the Second Circuit, the courts "are no longer *required* to

make a 'threshold inquiry' as to the violation of a constitutional right in a qualified immunity context, but we are free to do so."  *Kelsey v. County of Schoharie*, 567 F.3d 54, 61 (2d Cir. 2009) (citing *Pearson*, 129 S. Ct. at 821) (emphasis in original).  "The [*Saucier* two-step] inquiry is said to be appropriate in those cases where 'discussion of why the relevant facts do not violate clearly established law may make it apparent that in fact the relevant facts do not make out a constitutional violation at all.'" *Id.* (quoting *Pearson*, 129 S. Ct. at 818).

     The rights at stake in this action – to be free of unlawful retaliation for having engaged in protected activity and not to be exposed to cruel and unusual punishment – were clearly established at the relevant times. When the record is considered in a light most favorable to the plaintiff with all inferences drawn in his favor, the question of whether it could be concluded that it was objectively reasonable for defendants to believe they were acting in a manner that did not violate those established, federally protected rights, hinges upon the resolution of the same fact issues that serve as impediments to granting defendants' motion for summary judgment on the majority of the claims against defendants Artus and Minogue.  Until those issues are resolved, the question of qualified

immunity cannot be determined.  Accordingly, I find that at this juncture it is premature to determine whether either of the two moving defendants is entitled to qualified immunity from suit.

F.    Plaintiff's Motion for Sanctions

In response to defendants' motion for partial summary judgment, plaintiff has moved for sanctions against Superintendent Artus.  In support his motion, plaintiff contends Artus has failed to "act honestly", in violation of Rule 11 of the Federal Rules of Civil Procedure, by including in his declaration in support of the summary judgment motion a statement that is false.

Rule 11(b) provides, in pertinent part, that

[b]y presenting to the court a pleading, written motion, or other paper - whether by signing, filing, submitting, or later advocating it - an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if

specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b)(1-4).  "Rule 11 permits a court to impose sanctions upon attorneys, law firms, or parties for making or causing to be made certain improper representations to the court."  *Salovaara v. Eckert, III*, 222 F.3d 19, 32-33 (2d Cir.  2000).[8]  In the Second Circuit,

sanctions shall be imposed against an attorney and/or his client when it appears that a pleading has been interposed for any improper purpose, *or where*, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for extension, modification or reversal of existing law.

*Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir. 1985), *cert. denied, sub nom. City of New York v. Eastway Constr. Corp.*, 484 U.S. 918, 108 S.Ct. 269 (1987) (Emphasis in original).  Under Rule 11 sanctions may be imposed upon a represented party when the party "had actual knowledge that the filing of the papers constituted wrongful

---

[8]   The court cannot order sanctions for violation of Rule 11 (b)(2) against a represented party.  *Baffa v. Donaldson*, 222 F.3d 52, 57, (2d Cir. 2000).  However, both a represented party and his attorney may be sanctioned under Rule 11(b)(3). *Chien v. Skystar Bio Pharmaceutical Co.*, 256 F.R.D. 67, 72 (D. Conn. 2009).

conduct, *e.g.* the papers made false statements or was filed for an improper purpose," and on an attorney where he or she has failed to conduct a reasonable inquiry to verify the validity of a claim. *Calloway v. Marvel Entertainment Group*, 854 F.2d 1452, 1474 (2d Cir. 1988), *rev'd on other grounds sub nom. Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 110 S. Ct. 456 (1989).

Having reviewed the documents cited by plaintiff in support of his motion for sanctions, however, I am not convinced that plaintiff has established a proper basis for an award of sanctions. Indeed, I am unable to conclude that a contradiction exists between the cited portion of the Artus declaration and the ILC minute entry. In his declaration, Superintendent Artus has asserted, in relevant part, his unawareness "of recurring assaults by staff upon inmates in Clinton's upper-F block or the rotunda." Artus Decl. (Dkt. No. 67-6) ¶ 27. The declaration does not purport to deny knowledge of <u>complaints</u> by inmates of such incidents. The document offered by plaintiff as allegedly contradicting the superintendent's assertion, consisting of ILC minutes of a meeting held on July 27, 2007, apparently attended by defendant Artus, merely reports "a rise in the number of inmate <u>complaints</u> about staff abuse. . ..", without

indicating whether any have been found to be substantiated.  Plaintiff's

Exhs. (Dkt. No. 68-2) Exh. C (emphasis added).  As noted above, the ILC

minutes reveal the superintendent's awareness of potential misconduct by

DOCS employees; they do not, however, unequivocally establish that

recurring assaults by staff upon inmates had actually occurred prior to the

alleged assault upon plaintiff.  The statements in the Artus declaration and

the ILC minutes, therefore, are not necessarily contradictory.

Plaintiff admits as much, characterizing Artus' declaration as vague,

in addition to false, and, more importantly, asserting in his affidavit that he

"has raised the inference that defendant Artus did, in fact, have

information that unconstitutional acts were occurring . . .."  Plaintiff's

Motion for Sanctions (Dkt. No. 72) ¶ 2 and 3.  At most, plaintiff has

identified a potential inconsistency in defendant's position.  In this regard,

it should be noted that the submission of inconsistent statements alone is

insufficient to establish that a statement was false, or was filed for an

improper purpose.  *See Homkov v. Musika Records, Inc.*, No. 04 Civ.

3587, 2009 WL 721732, at *23 (S.D.N.Y. Mar. 18, 2009) (Wood, J.)

(distinguishing inconsistencies from intentional lies for the purposes of

sanctions under 18 U.S.C. § 1927).

Here, the evidence in the record is insufficient to unequivocally establish that any statements made by Artus were false.  Under these circumstances, I recommend denial of plaintiff's motion for sanctions.

IV.    <u>SUMMARY AND RECOMMENDATION</u>

From a careful review of the record in this case, conducted in light of defendants' arguments but drawing all inferences and resolving all ambiguities in favor of the plaintiff, I can find no evidence to support plaintiff's claims that defendant Artus was personally involved in the conduct giving rise to Brown's claim of retaliation, and therefore recommend dismissal of that claim as against that defendant.  I further recommend, however, that the balance of defendants' motion be denied, finding the existence of genuine issues of material fact concerning whether defendant Artus was aware of but failed to take appropriate measures to preclude staff abuse of inmates, and regarding defendant Minogue's awareness of and participation in the allegedly retaliatory assault upon plaintiff.  Turning to plaintiff's motion for sanctions, based upon the record currently before the court, I find no evidence establishing that defendants have submitted false statements to the court or engaged in conduct sufficient to support imposition of sanctions.

Accordingly, it is hereby respectfully

RECOMMENDED that defendants' motion for partial summary judgment (Dkt. No. 67) be GRANTED, in part, and that plaintiff's first cause of action, alleging unlawful retaliation in violation of the First Amendment, be DISMISSED as against defendant Artus, but that defendants' motion otherwise be DENIED; and it is further

RECOMMENDED that plaintiff's motion for sanctions (Dkt. No. 72) be DENIED.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of this

report and recommendation upon the parties in accordance with this

court's local rules.


Dated:      July 15, 2009
            Syracuse, NY

David E. Peebles
U.S. Magistrate Judge